FORD et al. v. BANCROFT et al.

(Circuit Court of Appeals, First Circuit. October 10, 1899.)

No. 251.

PATENTS—INFRINGEMENT—MACHINE FOR MAKING WOVEN CANE WORK.

The Morris patent, No. 401,050, for a machine for inserting diagonal strips in woven cane work, while on its face covering a pioneer invention for automatically doing the work, is not entitled to the broad construction accorded to such patents; the machine described having failed to accomplish the result intended, and no practical machine embodying the invention having ever been constructed. *Held*, also, not infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion in circuit court, see 85 Fed. 457.

William D. Baldwin and Loyd B. Wight, for appellants.

Frederick P. Fish and Guy Cunningham, for appellees.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

COLT, Circuit Judge. This appeal relates to patent No. 401,050, issued to Henry B. Morris April 9, 1889, for a "machine for inserting diagonal strips in woven cane work." The invention, in the words of the patentee, "is for a machine for automatically inserting diagonal threads or strips in a prepared foundation mat." The foundation mat of woven cane work, and the completed fabric after the insertion of the diagonal strip, are illustrated in the following figures:

Fig. 1    Fig. 2

The Morris patent, as appears from the specification, covers a complete automatic machine, composed of several groups of instrumentalities, namely, "improved means for inserting diagonal threads into a woven fabric, improved means for feeding the fabric to the mechanism for inserting the diagonal threads, and improved devices for severing the threads at proper length." The chief feature of the Morris invention relates to the dies which separate the strands

of the foundation fabric, and open a passage through which a diagonal strand may be passed. The inventor says:

"I conceived the plan of using a straight needle, and of opening a path through the foundation fabric for said needle by elevating and depressing the proper strands so that the needle might follow the course to be occupied by the diagonal thread. In carrying out this idea, I constructed a pair or set of separator bars furnished with separators, or, as I call them, dies for elevating and depressing the proper portions of the mat."

The patent was granted April 9, 1889. Morris conceived the invention in the winter of 1886–87, and between that time and the date of the patent he made several sets of separators for the purpose of experiment. Some time after the patent was issued, he constructed a machine, which proved to be structurally weak, and was abandoned. A second machine was completed in the winter of 1891–92. On March 17, 1892, this machine was operated in the presence of two of the complainants, Ford and Johnson, and of Henry G. Dunlap, at Geneva, N. Y. Morris and his son, Edmund, testify that the machine worked fairly well. Dunlap testifies that he told Ford that it "would never do the work practically," but "that it might be improved and worked down fine enough to make the work all right." The complainants Ford and Johnson are not called as witnesses, and we have not the benefit of their evidence as to the operativeness of this machine. Two days after this examination of the machine, on March 17, 1892, the complainants entered into a contract with the Morris Weaving Company, to whom the patent was issued as assignee of Morris, for the purchase of the patent; and about the same time Morris and his son entered into the employment of the complainants, and have since continued in their employment. This contract contained the following provision:

"It is further understood and agreed that the party of the second part shall pay to the party of the first part the sum of $5,000 upon the execution and delivery of these presents, and the balance of the twenty thousand dollars ($20,000) as follows: That when in the opinion of H. B. Morris or Edmund Morris, in behalf of the party of the first part, and of Henry G. Dunlap, or some other expert appointed by the party of the second part, the machine has been developed and perfected under the letters patent aforesaid so as to be commercially useful, that the parties of the second part shall pay to the parties of the first part fifteen thousand dollars ($15,000) cash: * * * provided that, if the experts of the two parties hereto shall not be able to agree as to when said machine has been so perfected, then, upon the demand of the experts of either party, a third party shall be chosen by the experts of both parties, who shall be a mechanical expert, and both parties hereto agree to abide by the decision of the majority of the three arbitrators thus appointed as to whether the machine has been so perfected at that time as to be commercially useful; and the parties of the second part agree to use all reasonable diligence in perfecting the machinery described and claimed under the said letters patent."

This machine was taken from Geneva to Chicago, and then to Michigan City, where the complainants carry on their business of manufacturing cane goods. The machine was then taken apart, and an attempt was made to build a third machine. This last machine was never completed. The separators used in the second machine and in the last partially constructed machine were different from

those described in the patent. Although the Morris Company, by its contract with the complainants, was to be paid $15,000, provided a practical and commercial machine could be constructed, the effort to build such a machine was abandoned. The reason given by Morris for suspending work on the machine (that, in view of the low price of making the fabric by hand, coupled with the fact that the contract called for the payment of royalties to the Morris Company, "he doubted" whether "the machine could be made at that time commercially operative or useful") is hardly satisfactory. It appears that he and his son continued their efforts to produce a machine for doing this work, and that they succeeded in designing a successful machine. A patent for this machine was applied for September 27, 1893, and was granted July 10, 1894. This was the first successful automatic machine for the insertion of diagonal strands in open cane work. Subsequently, in 1895, the son, Edmund Morris, was granted a patent for another machine. Both these last patented machines operated upon entirely different principles from the machine in suit. Both proved to be practical and useful, and machines embodying these patents were at once adopted, and are now operated by the complainants.

In the Morris patent, in suit, a continuous channel or shed is opened in the foundation fabric for the passage of a straight needle, by means of separator bars which, when brought together, elevate and depress the proper strands. But the difficulty is that the attempts by the inventor, assisted by others, and under the most favorable circumstances, to embody this fundamental conception of the patent in a practical, useful machine, have been wholly unsuccessful. Whether the defect in the machine is owing to the absence of means to properly register the foundation fabric so as to hold the strands in proper position for the insertion of the diagonal strand when the separators are brought together, or to the shape of the projections on the separators, or to the use of a hollow needle, or, as seems to be the case, to all these circumstances combined, the fact is that the machine has proved a failure, and that the inventor and his son subsequently solved the problem by designing another machine operating on a different principle. Neither Morris nor any subsequent inventor has succeeded in the construction of a practical machine on the principle described in the patent in suit. In the defendants' machine the bars or separators and the needle are very different in construction and mode of operation from those described in the Morris patent. The bars do not open a continuous channel or shed for the passage of the needle by bringing the bars together, and so depressing and elevating the proper strands in the foundation fabric. On the contrary, their principal function is to crowd down the strands around the conical registering spurs of the lower bar, and to cause the strands to lie in a correct position above the sliding pins in the lower bar. When the needle is pushed forward, its point reaches the sliding pin just as the pin has been raised by a cam bar and has elevated the warp strands above the level of the fabric. The defendants' machine uses a straight, slender, solid needle with an eye in its point, which will separate the

strands by passing through the fabric with an up and down motion imparted by the sliding pins rising and falling in its path, which pins co-operate with the needle to effect the separation; and the diagonal strand, having been threaded into the eye of the needle, is inserted into the fabric by drawing the needle back between the separated strands.

The defendants are charged with infringing the first, fourth, and fifth claims of the patent. The first claim is as follows:

"(1) In a machine for inserting diagonal threads in warp fabrics, the combination, substantially as hereinbefore set forth, of the separators for opening a diagonal passage in the fabric, means for actuating the separators, the needle which carries the diagonal thread through said passage, and means for actuating the needle."

The fourth claim is for the combination of the separators, needle, and feed rollers. The fifth claim is for the combination of the separators with a longitudinal groove, needle, and feed rollers. We do not think the defendants' machine infringes these claims, for the reason that the separators and needle in their machine are widely different in construction and mode of operation. Upon this point we agree with the language of the court below:

"We do not find in the respondents' machine either the complainants' channel, or their needle, or the equivalent of either, or anything which performs the function of either. The complainants' channel, so important for the rapid driving of a straight needle, could find no equivalent in respondents' machine, unless the complainants' patent includes every form of separation of the warp and weft strands, for the passage of any form of needle, by any form of separating device; and, under the circumstances to which we have referred, the art of weaving, and its kindred arts, forbid giving so broad a monopoly to complainants."

Where a patent represents a marked advance in the art (for example, where an inventor for the first time accomplishes a certain result by organizing several groups of instrumentalities into a single automatic machine, as in the Morley patent for sewing shank buttons to a fabric, or in the Reece patent for a buttonhole sewing machine), such a patent is called a "pioneer"; and the courts, in its construction, have adopted a liberal rule with respect to equivalents. Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299; Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 61 Fed. 958, 10 C. C. A. 194. Upon paper the Morris patent resembles the Morley and Reece patents, but there the similarity ends. The Morley machine solved the problem of automatically sewing a shank button to a fabric. The Reece machine solved the problem of an automatic buttonhole sewing machine. Both were practical and useful machines, and each, in a sense, revolutionized the particular branch of the art to which it relates. While the Morris patent describes a machine of the same type, it did not solve the problem of automatically inserting by machinery a diagonal strip in open cane work. No practical machine embodying the invention has ever been constructed. The successful solution of the problem was subsequently attained by the inventor and his son in a patented machine constructed on a different principle. If the Morris machine had proved to be practical and useful, it is doubtful whether the defendants'

machine could be held to be an infringement upon any recognized rule of equivalents, in view of the radical difference between the two structures. But, the Morris machine having proved a practical failure, it is manifest that the defendants' machine cannot be held to infringe. The decree of the circuit court is affirmed, with costs.