## BRADFORD v. BELKNAP MOTOR CO.

(Circuit Court, D. Maine. November 12, 1900.)

### No. 517.

1. PATENTS—CONSTRUCTION OF CLAIMS—PAPER PATENTS.
    While the fact that a patented device has not gone into practical use does not necessarily defeat the patent, yet, with reference to construing the claims, it necessitates caution to avoid going beyond what the actual invention clearly shows.

2. SAME—SUIT FOR INFRINGEMENT—ACCOUNTING.
    It seems that the court will not appoint a master in a patent cause in equity, where it is apparent that the damages will be trivial or disproportionate to the expense of taking the accounts.

3. SAME—INJUNCTION—LACHES.
    The defense of laches is not ordinarily effective to bar injunctions against infringers who have been seasonably notified of the patentee's rights, when it appears that the complainant was disabled from carrying on litigation by lack of financial means.

4. SAME—INFRINGEMENT—ELECTRICAL APPARATUS.
    The Bradford patent, No. 535,158, for a method of, and apparatus for, regulating electric circuits, construed, and held not infringed.

In Equity. Suit for infringement of a patent. On final hearing.

Clifton V. Edwards, for complainant.

Edward M. Rand and Seth L. Larabee, for respondent.

PUTNAM, Circuit Judge. This case relates to applied dynamic electricity with reference to some of its most complicated and delicate phases. A thorough understanding of the purposes which the inventor sought to accomplish, and of the principles applicable there-

to, in the absence of a thorough explanation by experts of both practical and scientific attainments in the art, requires a mastery of the particular science to which the patent in suit relates. Although the patent issued in March, 1895, the inventor's device never has gone into commercial use, and no practical machine illustrating it has ever been constructed. Neither has the court been assisted by any model, and the expert testimony on either side proceeds too much on the assumption that the court has a special knowledge which it would not be justified in making use of, even if it thought itself possessed of it. Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, 67; Boston & R. Electric St. Ry. Co. v. Bemis Car-Box Co., 25 C. C. A. 420, 80 Fed. 287, 290; Parsons v. Seelye, 40 C. C. A. 484, 100 Fed. 452, 454.

At the hearing we gathered an apprehension of the conclusions which we must reach. Our subsequent investigations have not changed that apprehension; and, although it has increased our doubts with reference thereto, yet we are satisfied that they would not be removed by further consideration of the case, and that the interests of the parties will be better advanced by a disposition of the suit which will enable an appellate tribunal seasonably to review it, rather than by holding it longer under advisement.

Although the fact that the complainant's device has not gone into practical use does not necessarily defeat the patent, and although, on the authority of Packard v. Lacing-Stud Co., ubi supra, it probably passed the experimental stage, yet, applying the rules with reference to mere paper machines, stated in Ford v. Bancroft, decided in this circuit and reported in 85 Fed. 457, 461, and in the same case on appeal (39 C. C. A. 91, 98 Fed. 309, 312, 313), we must proceed with great caution, and avoid giving the complainant the benefit of anything beyond what his invention and patent clearly require. That the complainant has shown great ingenuity in certain directions is admitted; but to precisely what the ingenuity relates, and how far its results are limited by the prior art, are the main questions in the case.

The patent contains five claims, of which the first, second, fourth, and fifth are in issue. For the purpose of making clear the conclusions we have reached, it is necessary to repeat only claim 1, as follows:

"In an electric regulating apparatus, the combination of a current-varying device, an electro-magnet, with differential windings to govern the movements of said current-varying device, electric circuits, and a device responsive to variations in the current, to be regulated to control action of said magnet, and driving gear to move said current-varying device progressively."

The patent concerns the method and apparatus for regulating electric circuits. The elements admittedly common to the art prior to the patentee's invention were: First, at one terminus a "current-varying device," which operates by moving either the arm of the rheostat or the brushes which control the subcurrent shunted to the magnets of the electric dynamo; and, second, at the other terminus, a so-called "solenoid," or, in other words, a subsidiary helix, which is more or less magnetized according as the current to be regulated

is more or less weak. This helix, according as the main current varies, draws down or relaxes, through its varying increase or diminution of magnetic power, an arm which, directly or indirectly, operates to move the current-varying device. It is plain, however, that, while we use the expression "current-varying device" as limited to the mechanism which directly impinges on the arm of the rheostat, yet that expression may well be construed to cover the entire mechanism, including both termini which we have named. At various points throughout the claims and specification this expression is used in either sense indiscriminately. In claim 1 it is used in the narrower sense, but in claims 4 and 5 we find the words "current-varying apparatus"; and, on the whole, we are unable to discover anything in the varying use of the expression in question which will enable us to solve the problems which we have to dispose of.

The respondent's alleged infringement grows out of the construction of machines in accordance with the claims of patents to William H. Chapman, dated, respectively, August 31, 1897, March 1, 1898, and November 8, 1898. It is, however, now admitted that the machines constructed in accordance with the earliest of these patents do not infringe. This eliminates 13 from the case. Independently of this, there arises an important question whether, even if the bill were sustained, the complainant would be entitled to any relief beyond an injunction. The respondent urges laches as a reason why an account should not be decreed; but the complainant seasonably notified the respondent of his demand, and he testifies that he was unable to follow up his notice on account of lack of means to carry on patent litigation. That class of litigation, unfortunately, often involves so much expense that the courts are tender to patentees under such circumstances, and the complainant cannot be charged with laches. The difficulty is of a more complicated character.

The record raises in a formidable manner the proposition that the complainant's device was never put on the market because the cost of construction, according to his specification, would be disproportionately expensive. It may be that, even if Chapman can be charged with adapting complainant's underlying conception, he improved on it in the way of simplicity of construction to such an extent as involved invention, and so as to overcome the disproportionate cost of construction. Indeed, the case seems to fall within the late decisions of the supreme court to such an extent as to lay no basis for substantial damages. Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263, and cases based thereon. So far as relates to an account of profits, how can equity require such an account where it appears that the complainant's device is altogether too costly to have any commercial value? And is not the case within Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103?

In Machine Co. v. Crossman (C. C.) 57 Fed. 1021, we declined to appoint a master on the ground that the accounting would be of a trivial character. Our conclusion was overruled by the circuit court of appeals in the same case (61 Fed. 888), but this without any discussion of the underlying principle which governed the circuit court. It is a well-settled rule that neither equity nor admiralty will pro-

ceed for nominal damages only. Little v. Kellam (C. C.) 100 Fed. 353, 355; Munson v. Steamship Co. (C. C. A.) 102 Fed. 926, 928; Curt. Pat. (4th Ed.) 434. Equity will maintain the right to give a value, but it will not, as will the common law, proceed to an assessment of damages which are vague, uncertain, or nominal in amount; so that it is not improbable that, in any event, the complainant could only be entitled to an injunction. Saxlehner v. Siegel-Cooper Co., 179 U. S. 42, 21 Sup. Ct. 16, 45 L. Ed. ——, is directly in point.

It is admitted that the complainant's device is ingenious, and it is not denied that he is entitled to be regarded as an inventor. The question, therefore, is limited to one of infringement, and this, as we have already suggested, depends on the breadth of the complainant's invention and the construction of the patent. He claims to have started with the simple form of regulator which we have described, with a solenoid at one terminus and the arm of the rheostat at the other. The arm was ordinarily operated directly from the solenoid by what is called by some of the witnesses a "magnetic pull." The complainant claims to have introduced two elements into this simple device, namely, a relay, and what is described in the claim which we have quoted as a "differential winding." His theory is practically as follows: That it is obvious that the simple device which we have described, dependent for action on the development of a "fault," was defective in principle, and could only partially correct, and not prevent, serious variations in the current; that, to maintain a practically constant force, it was necessary to make use of an auxiliary power or relay; and that the use of an auxiliary power developed a new difficulty,—that is to say, the difficulty of controlling the auxiliary current so as to overcome its inertia, and prevent the excessive sparking which would normally attend its use. It is clear, and it is admitted, that all this was extremely useful in the art. The claims in issue are broad enough to cover these new elements, and the questions arise whether they were new with Bradford, and whether, if new, the patent, taken as a whole, is to be construed as broadly as the mere letter of the claims apparently requires. In view of the rules which we have stated as applicable to merely paper machines, it is evident that the complainant must establish his case clearly on both these points.

Bradford, in his specification, elaborates at great length the method in which he employs the relay current and the so-called "differential winding." The relay current is constant, ready whenever called on to operate the arm of the rheostat. The call on it is made by electrical contacts with the solenoid, the contacts alternating as the core of the solenoid is drawn in or pushed out; thus alternating the movement of the arm of the rheostat in one direction or the other, as the main current develops an excess or an insufficiency of force. The connection is made with the arm of the rheostat through a magnetic "clutch," which, with the aid of the relay current operating through the differential winding, instantly sets the arm in motion, without any obstacle from inertia, and without sparking. This "clutch," it will be noticed, is, in the device shown by Bradford in his specification, interposed between the solenoid, as known in the

original art, and the arm of the rheostat. The respondent, in accordance with the device of Mr. Chapman, makes use of no "clutch," but it applys the relay current and the differential winding directly to the solenoid shown in the original art. If Bradford first brought into the art the relay current and the differential winding, the respondent makes use of the substance of what he invented. In that view, the respondent has merely availed itself of the ingenuity of Chapman, who would be presumed to have begun with the invention of Bradford, and, by improvements, relieved it from the cumbersome mechanism of his electric "clutch," and thus to have materially simplified the device. This, however, even though it involved invention, would have been merely an improvement so far as Bradford was concerned, and therefore subject to the control of the court in his behalf. If, therefore, the claims in the complainant's patent are to be construed broadly according to their letter, and the complainant was the true inventor of all which they covered as thus construed, the respondent cannot escape the charge of infringement.

The testimony, however, in behalf of the respondent is positive that, at the time of the complainant's invention, the art of electric regulators was full, not only of direct-acting solenoids, but of mechanical relays of various types, and that differential winding for the purposes of the art was a well-known device some years before the complainant's application was filed in the patent office. The only contradictory evidence on the state of the art is the statement of the complainant that differential winding was not known to him prior to his invention, but he introduced no proof to show that this suggests anything more than a limited knowledge of this particular branch of the art on his own behalf.

There can be no invention in merely combining in this art a relay current with differential winding. Indeed, the case does not enable us to perceive that there could be differential winding without a relay current, or even that there could be any occasion for the former without the latter. The complainant does not suggest either, but, in connection with its explanation of the necessity of the differential winding, it apparently implies that it exists only as an incident to the relay. Therefore we must hold that both differential winding and the relay current, and the combination of the two, were within the prior art, as that expression is defined by the circuit court of appeals for this circuit in Parsons v. Seelye, 40 C. C. A. 484, 100 Fed. 452; so that, at the time of Bradford's application for his patent, there could be no invention in introducing the same, either separately or in combination.

The complainant's specification is in harmony with this view of the state of the art. It is devoted almost entirely to a description of the electric "clutch" to which we have referred. He immediately precedes his claims with the following sentences:

"To secure powerful and accurate action is the object of the invention described in the foregoing specification. The alternating current causes wheel 16 to be powerfully grasped and instantly released by turns, thereby allowing the apparatus to be driven at a comparatively high rate of speed without losing control of the regulating mechanism attached to said wheel."

The specification also contains the following very significant language:

"The apparatus described in the foregoing specification differs from other apparatus for the same purpose in the means employed to cause instantaneous connection and disconnection between the current-varying device and an auxiliary motor by which it is moved in response to incipient changes in the current to be regulated."

These expressions, in connection with the elaborate details of the electric "clutch" in the specification, may well be presumed to have induced the patent office to have understood that the broad language of the claims was limited to the "apparatus"; that is, to the particular class of machines thus described. However this may have been, the claims are necessarily limited by the prior art as proven in the case. It cannot be holden, therefore, that the complainant is entitled to cover every electric regulator which combines differential winding with a relay, or which includes either without the other; and it follows that the respondent cannot be holden to have infringed.

Let there be a decree under rule 21 dismissing the bill, with costs for the respondent.